## SAWYER v. SENN.

1. S. being indebted to bank by overdrafts on his individual account $40 and, also, on account of S. & Son, $1,112, his wife gave her bond, wherein it was recited that S. was indebted by overdrafts to said bank to the amount of $1,500, and the condition of said bond was that said S. would pay $1,500 with interest one year after date ; and this bond was secured by a mortgage of Mrs. S.'s separate estate. *Held*, that this bond and mortgage secured not only the overdrafts on S.'s individual account, but also all indebtedness which overdrafts would create against S., and the terms of the mortgage on record so informed all subsequent purchasers of the mortgaged land.

2. By agreement between the bank and S. he continued to make deposits with the right to check out, which he did fully. *Held*, that this agreement was no fraud on Mrs. S. or her other creditors, and these deposits, under this agreement, were not applicable to the overdrafts on S.'s former account.

3. To satisfy the bank examiner, Mrs. S. gave her note for $1,500, payable at 90 days, and the proceeds were credited to S.'s deposit account, but within a month, she signed an agreement that said note was cancelled, and the original bond and mortgage were to continue of force. *Held*, that Mrs. S. could not claim that her mortgage was released by the note, nor could a mortgagee subsequent in time to the cancellation of this note.

4. Where a bond secures all overdrafts creating a debt against S., parol testimony is admissible to show what overdrafts do create such an indebtedness; as, for example, overdrafts of a partnership firm of which S. was a member.

5. An extension of time, with the consent of the surety, does not release him, and certainly not where the extension is to the surety himself.

6. The bond above recited did not create a continuing guaranty, but only a guaranty of the amount of indebtedness by overdrafts on January 27, 1878, not exceeding fifteen hundred dollars.

Before FRASER, J., Richland, April, 1886.

Judges Witherspoon and Norton sat at the hearing of this appeal, in the stead of the Chief Justice and Mr. Justice McGowan.

The appeal was from the following decree :

This case was heard by me at the term of the court held in March and April, 1886, on the report of the master and exceptions thereto. This case was before me at a previous term of the court, and an order made by me May 2, 1884, recommitting the

case to the master with directions to take certain testimony and report again his conclusions to this court. The master's report thus made is the one under consideration. Circumstances make it necessary for me to announce my conclusions very briefly. Plaintiff claims under a bond and mortgage dated January 27, 1877, and the defendants under a bond and mortgage dated May 25, 1878, executed by defendant, Margaret R. Senn, wife of Rufus D. Senn, the latter of whom, with a son, constituted the firm of R. D. Senn & Son. Mrs. Senn was in no way connected with their transactions in business, except by these bonds and mortgages. Plaintiff claims priority of payment under the mortgage of January 27, 1877, and defendants, F. W. Wagener & Co., dispute his right to such priority. These papers have all been duly executed and recorded.

The first objection raised to the plaintiff's mortgage is, that the bond recites as its consideration an indebtedness of R. D. Senn to the bank by overdraft. I have not changed the opinion expressed in the order of May 2, 1884, that it does not impair the validity of this bond and mortgage that it is shown by parol proof, or other evidence, that the indebtedness which was in the contemplation of the parties as the consideration of the bond was the overdraft of R. D. Senn & Son, and not of *R. D. Senn.* The seal itself imported a consideration. If R. D. Senn & Son was indebted to the bank, then certainly one of the partners, R. D. Senn, was indebted to the bank, and there is no inconsistency. Under this view the bond became on its face an obligation to pay $1,500 twelve months after date absolutely. If it were not that the bond and mortgage can be shown to be only collateral, then it would be enforced for its full amount—$1,500 and interest.

A conveyance absolute on its face can be shown by parol testimony to be only security for a debt or a mortgage, and the same rule should apply to a bond and mortgage for the payment of money absolutely and to show that it is a collateral only. I am satisfied from the evidence in this case—and for this purpose the testimony of plaintiff and R. D. Senn is competent—that this bond and mortgage was given, not as payment, but simply as security for the payment of the amount due at its date by overdraft by R. D. Senn & Co. If that overdraft has not been paid,

then plaintiff's bond and mortgage is still an existing obligation for its payment and has its priority.

I think that *prima facie* the effect of the mode of keeping accounts between R. D. Senn & Son and the bank before and after the date of this bond and mortgage was to set off the first deposits afterwards made against the sums due the bank by overdraft. This was, however, only a presumption, and I think has been rebutted by the testimony. · For the purpose of showing what was the agreement and understanding between the parties as to the appropriation of payments, I think the testimony of plaintiff and D. R. Senn competent. Taking their testimony, and all the other circumstances of the case, I have come to the conclusion that the deposits made after January 27, 1877, were to be held for *future checks*, and were so paid out, and that this was not a new contract, but the agreement in reference to these deposits, which went into effect and was acted upon by the *parties* from the beginning. Such an agreement does away with the presumption arising from the way in which deposits and checks were entered on the general account. *Jones Chat. Mort.*, § 638; 1 *Jones Mort.*, § 905.

The note of Mrs. Senn, March 1, 1878, for $1,500, at 90 days, endorsed by R. D. Senn & Son, and the accompanying agreement signed by her, does not operate as payment of the overdraft of R. D. Senn & Son, and seems to have been a mere change of the form of the debt for which she and R. D. Senn & Son were liable to the bank. The debt not having been paid, the mere delivery of the mortgage to her, to be re-delivered immediately under the agreement, does not seem to me to be a release of its lien, *as there was no consideration for such release or extinguishment, and no purpose to extinguish it, and the paper was not under seal.* For these reasons, and subject to the qualification that I regard the debt due by overdraft at the execution of the bond and mortgage, and interest thereon, as the amount covered by the mortgage, the exceptions are overruled and the report of the master confirmed and made the judgment of the court.

It is adjudged, that the mortgaged premises described in the complaint in this action, or so much thereof as may be sufficient to pay the sums due, with interest and costs, be sold at public

auction by the master of Richland County, upon the following terms, &c. &c.

From this decree, F. W. Wagener & Co. appealed to this court upon the following exceptions, omitting the first three:

IV. That his honor erred in holding that the validity of the bond and mortgage of 27th January, 1877, is not impaired by showing by parol proof or other evidence that the indebtedness contemplated by the parties as the consideration of the bond was the overdraft of R. D. Senn & Son, and not of Rufus D. Senn, in so far as F. W. Wagener & Co., subsequent mortgagees without notice thereof, are concerned.

V. That his honor erred in not holding that parol proof or other evidence was inadmissible to show that R. D. Senn & Son and Rufus D. Senn were the persons whose indebtedness by overdraft was contemplated so as to affect F. W. Wagener & Co.

VI. To the statement that "if R. D. Senn & Son were indebted to the bank, then, certainly, one of the partners, R. D. Senn, was indebted to the bank, and there is no inconsistency."

VII. To the statement that "under this view" (excepted to immediately *ante*), "the bond became on its face an obligation to pay $1,500 twelve months after date absolutely"; whereas, whether this or any other view be correct, it is plainly expressed on the face of the bond that it is not an absolute but a conditional obligation of a guarantor.

VIII. To the statement that "if it were not that the bond and mortgage can be shown to be only collateral, then it would be enforced for its full amount, $1,500, and interest."

IX. That his honor erred in holding that the testimony of plaintiff and Rufus D. Senn is competent to show that, and that this bond and mortgage were given as security for the payment of the amount due at its date of overdraft by R. D. Senn & Co.

X. That his honor erred in holding that if the overdrafts by R. D. Senn & Son have not been paid, then the bond and mortgage to plaintiff are still existing obligations for the payment of said overdrafts, and have priority over the bond and mortgage to F. W. Wagener & Co.

XI. That his honor erred in holding that the *prima facie* effect of the mode of keeping accounts between R. D. Senn & Son and

the bank, both before and after the bond and mortgage were given to plaintiff, to wit: to set off the first deposits afterwards made against the sums due the bank by overdrafts, has been rebutted by the testimony, in this, because: (*a*) Such testimony is inadmissible to affect either Mrs. Senn or Wagener & Co. (*b*) Even if admissible, its effect should have been ruled to be to release Mrs. Senn, and in no manner to affect injuriously Wagener & Co.

XII. That his honor erred in holding "that for the purpose of showing what was the agreement and understanding between the parties as to the appropriation of payments, the testimony of plaintiff and R. D. Senn is competent, in this: (*a*) That no question of appropriation of payments arises. (*b*) That said agreement and understanding being made without the knowledge or assent of Mrs. Senn, releases her.

XIII. That his honor erred in holding that the agreement made between the plaintiff and R. D. Senn, that the deposits were to be held for future checks, is binding upon Mrs. Senn and Wagener & Co., whereas he should have held that the deposits went to payments of overdrafts in the usual course of business, at least so far as Mrs. Senn and Wagener & Co. are concerned.

XIV. That his honor erred in holding that this agreement did away with the *prima facie* effect of the mode of keeping accounts between the bank and R. D. Senn & Son, in so far as Mrs. Senn and Wagener & Co. are concerned.

XV. That his honor erred in not holding that the note of 1 March, 1878, and accompanying agreement, even if not payment of the overdrafts of R. D. Senn & Son, were a release of Mrs. Senn's mortgage to plaintiff.

XVI. That his honor erred in holding that the delivery of the mortgage to Mrs. Senn was not a release of its original lien.

XVII. That his honor erred in overruling the exceptions of Wagener & Co., and confirming the report of the master.

XVIII. To all the ordering, adjudging, and decreeing portions of the decree.

XIX. That the complaint as originally filed without the insertion of paragraph III.*a* warranted testimony and inquiry as to the individual overdrafts of Rufus D. Senn only, and as amended

by the insertion of paragraph III.*a* warranted testimony and inquiry on the part of plaintiff, in so far as Wagener & Co. are concerned, to the overdrafts, neither of Rufus D. Senn individually, nor of R. D. Senn & Son, and that said complaint should have been dismissed as to Wagener & Co., in so far as it sought to establish a priority of lien against them, and his honor should have so held.

XX. That his honor should have granted Wagener & Co. the entire relief sought by them.

*Messrs. Bachman & Youmans*, for appellants.

The amendment to the complaint should not have been allowed. *Code*, §§ 144, 196, 200; 5 *S. C.*, 289; 21 *Id.*, 225, 242; 2 *Wait Prac.*, 469. Wagener & Co. can insist upon all defences that Mrs. Senn has; and Mrs. Senn being a surety is a favorite of the law. 17 *S. C.*, 4; *Brandt Sur.*, § 79. She occupies a stronger position as guarantor. *Brandt*, §§ 1, 9. Deposits should be applied to oldest overdrafts. *Morse Bank*, 27, 28; 1 *Mer. Ch.*, 604; 2 *Barn. & Ald.*, 43; 4 *Q. B.*, 792. Mrs. Senn was entitled to the protection of this principle, and any agreement made to the contrary without her consent discharged her. The overdrafts secured were only those of R. D. Senn—not those of Senn & Son. *Morse Bank*, 40; 6 *Ad. & Ell.* (N. S.), 514. This was the only notice that record gave to Wagener & Co. 12 *C. E. Green Eq.*, 374; 14 *S. C.*, 321. The bank books also showed payment. *Morse*, 48, 249, 316; 25 *Ill.*, 35. Surety is released by any change in the contract. 2 *Lead. Cas. Eq.* (Wh. & T.), 1875, 1907. As to rights of subsequent mortgagees, see 2 *Mill Con. R.*, 267. Bond recites only debt of Senn, and the obligee knew of the two accounts. 3 *McCord*, 567; 1 *Greenl. Evid.*, § 277. This was not a continuing guaranty. 1 *Bail*, 620; *Rice*, 131. Plaintiff now seeks to reform his contract, but it cannot be done. 1 *Hill Ch.*, 126; 2 *McCords Ch.*, 142; 4 *Rich. Eq.*, 313. Certainly not as to Wagener & Co. 38 *Ala.*, 338; 43 *Mo.*, 179; 5 *Mason*, 572.

*Mr. John T. Sloan, jr.*, contra.

The meaning of a contract is not to be changed because one of

the parties is a surety. *Brandt Sur.*, § 80; 2 *How.*, 426; 22 *S. C.*, 279; 23 *How.*, 164. Senn was indebted by overdrafts—it matters not whether individually or as a member of a firm. Deposits made before bond debt fell due could not be applied to that indebtedness. 9 *S. C.*, 344; 12 *Rich.*, 524; *Morse Bank*, 380; *Story Prom. Notes*, § 489. A surety cannot control the application of payments directed by the principal. *Pitman Pr. & Sur.*, 159; 3 *Strob.*, 497. The overdraft was to continue for a year. The agreement as to subsequent deposits was no injury to Mrs. Senn. 52 *Ind.*, 513; 47 *N. Y.*, 668; 5 *Metc.*, 259; 22 *S. C.*, 279. Besides, Mrs. Senn knew all about it. The deposits did not extinguish the old account, because it was otherwise agreed. 1 *Am. Lead. Cas.*, 283; 9 *S. C.*, 344; 20 *Id.*, 34; *Jones Chat. Mort.*, § 638. Nor was the note intended or accepted as payment. 5 *Beav.*, 423; 131 *Mass.*, 467; 12 *Penn.*, 605; 11 *S. C.*, 547; 13 *Id.*, 253; 15 *Id.*, 72; 21 *Id.*, 142, 290.

August 22, 1887. The opinion of the court was delivered by

MR. JUSTICE NORTON. Rufus D. Senn is the husband of M. R. Senn and the senior member of the firm of R. D. Senn & Son. On January 27, 1877, M. R. Senn executed to plaintiff, as cashier of the Central National Bank, her bond for $3,000, and recited therein that, "Whereas Rufus D. Senn, by overdrafts, has become indebted to the said Central National Bank to the amount of fifteen hundred dollars, and is unable to refund the same. Now the condition of this obligation is such, that if the said Rufus D. Senn * * * do and shall well and truly pay or cause to be paid unto the above named J. H. Sawyer, cashier as aforesaid, * * * the full sum of fifteen hundred dollars, twelve months from this date," with interest, &c., then to be null and void, and gave her mortgage of even date on real estate to secure said bond.

The actual liabilities of R. D. Senn at that date on overdrafts to the bank were, on his individual account, $40.40, of which $30 was paid July 2, 1877; and on the account of R. D. Senn & Son, $1,112.36. On March 1, 1878, M. R. Senn delivered to plaintiff her note for $1,500, endorsed by R. D. Senn & Son, to change the form of indebtedness of R. D. Senn & Son's over-

drafts. This note was cancelled and the original bond and mortgage continued of force, about March 25, 1878, by M. R. Senn's written agreement. R. D. Senn & Son deposited at numerous times between January 27, 1877, and January 27, 1878, sums, which in the aggregate amounted to $15,451.71, which by agreement between R. D. Senn & Son and the said bank, made prior to any of said deposits, they were to use in their business by drafts from time to time as the deposits were made, and they did so use the whole of said deposits and became further indebted to said bank by overdrafts.

M. R. Senn executed to F. W. Wagener & Co., on May 25, 1878, a bond for $2,000, conditioned that Rufus D. Senn should pay to them $1,000, with interest, by March 20, 1883, and secured the same by a second mortgage on the real estate mortgaged to plaintiff as aforesaid.

Plaintiff on June 5, 1882, commenced this action against M. R. Senn and F. W. Wagener & Co. to foreclose his mortgage, and subsequently had leave to amend his complaint by alleging as paragraph 3a, that there was a mistake in the condition of the bond, and that it was intended to cover overdrafts by R. D. Senn & Son. Mrs. Senn answered, setting up various defences, all of which she subsequently withdrew. F. W. Wagener & Co. answered, setting up their own mortgage, admitting all of the allegations of the complaint except paragraph 3a, and alleging that plaintiff's bond was conditioned for the payment of overdrafts by Rufus D. Senn individually made; that he was not so indebted; that R. D. Senn & Son had paid their overdrafts existing when M. R. Senn's bond to plaintiff was executed—first, by deposits of $15,451.71 between its date and maturity; and second, by the note of M. R. Senn for $1,500, endorsed by R. D. Senn & Son.

This action has been reduced to a contest for priority between two mortgage creditors of M. R. Senn. Mrs. Senn has waived any defence she may have had to either. F. W. Wagener & Co.'s mortgage is valid. It is, however, junior not only to plaintiff's mortgage, but also to the latest transaction between plaintiff and M. R. Senn. They are subsequent creditors and required to take notice only of the contract which was referred to in the rec-

ord of January 31, 1877, and not of any other or variation of this contract, whether written or oral, whether left out of the instrument referred to by mistake or otherwise. The allegations of paragraph 3*a* of the complaint are therefore immaterial to the case as it now stands.

What was that contract? M. R. Senn's bond and mortgage were collateral, and it was not material to state the precise amount of the principal debt, the object being to make the collateral large enough to cover that. So the sum stated in the collateral is $1,500, to secure a then subsisting indebtedness of Rufus D. Senn to the Central National Bank by overdrafts of any person or persons, who could create an indebtedness against him by drafting; that the principal of such indebtedness should not exceed $1,500. Rufus D. Senn was then liable to said bank on overdrafts by himself, $40, of which $30 was paid July 2, 1877, and by his firm, R. D. Senn & Son, $1,112.36. The withdrawing by R. D. Senn & Son of all of their subsequent deposits by special agreement prior to their having been made, prevents them from being applicable under the general rule to the extinguishment of their overdrafts existing on January 27, 1877, the time for the payment of which had been extended one year by the transaction on that day.

In order to make it appear to the comptroller of the currency that the form of the indebtedness to the bank had been changed from overdrafts by R. D. Senn & Son to bankable paper, M. R. Senn made her note at ninety days for $1,500 to R. D. Senn & Son, which was by them endorsed to the bank and a credit of that amount entered on their deposit account. This was not intended as, and was therefore not, a payment, and as soon as the exigency had passed, long before the note fell due and about two months before the mortgage to F. W. Wagener & Co., the transaction was annulled and the parties and their accounts restored to their previous condition by writing the following words across the face of the note, to wit: "This paper being informal is cancelled and the original bond and mortgage in possession of the bank to continue of force. (Signed) M. R. Senn, J. H. Sawyer, Cashier. Witness, R. D. Senn."

This amounted to a recognition by M. R. Senn of the continu-

ing validity of her bond and mortgage to plaintiff for the original purpose. The record having remained intact, was notice to F. W. Wagener & Co. of the exact *status quo* at the time he took his mortgage. If the plaintiff had appealed, he might have had, in addition to the amount adjudged to him by the master and Circuit Judge, the amount of Rufus D. Senn's individual account, but not having appealed, the Circuit decree cannot be disturbed in that respect.

Having announced our conclusion on the law and facts, let us turn aside to review the exceptions and able argument for F. W. Wagener & Co., which militate against our decision.

The first three exceptions do not raise any issue of substance, were not argued, and need not be considered. The next seven relate to the construction of the condition of M. R. Senn's bond to plaintiff and what parol proof is admissible. If the written words of that were construed to mean that Rufus D. Senn had become indebted to the · bank by overdrafts drawn by himself on his individual account, then the authorities cited by counsel seem decisive that no parol proof could be adduced to reform it, or give a different effect as to F. W. Wagener & Co., subsequent encumbrancers. But having construed that to mean that Rufus D. Senn had become indebted by overdrafts by whomsoever drawn, so only the drawer or drawers had power to create an indebtedness against him by drawing, it was competent to prove by parol who had made such drafts and for how much. It was proven that he was a general partner in the firm of R. D. Senn & Son, and it follows that their overdrafts created an indebtedness against him and were within the contemplation of that bond, and unless discharged, retained their priority under the mortgage over F. W. Wagener & Co.'s debt under his mortgage.

The next four exceptions relate to the admissibility .of the evidence to prove the agreement as to deposits by R. D. Senn & Son subsequent to M. R. Senn's bond and mortgage to plaintiff, and as to the effect of such agreement on F. W. Wagener & Co. In addition to the authorities cited by plaintiff, it is clear upon reason that R. D. Senn & Son might make such ₊a contract without consulting M. R. Senn or her subsequent creditors. By her bond she contemplated that no payments were during the

ensuing twelve months to be made on the overdrafts to which it was collateral. They were to be paid twelve months from that date—not within one year, nor by, nor on or before, a particular day. The contract was with reference to funds not only upon which she had no lien, but which she could not consistently with her undertaking have requested to be applied to the overdrafts. It would not have been a fraud upon her rights if R. D. Senn & Son had had exactly the same transactions with another bank without agreement and without notice to her, and it cannot be that such an agreement might not be made, so as to allow R. D. Senn & Son to continue to bank with the bank of their choice.

If these deposits did not relieve her, they cannot be considered with reference to F. W. Wagener & Co. They were then utter strangers and only became creditors of M. R. Senn on May 25, 1878, when she became surety for her husband, Rufus D. Senn's debt to them. The deposits had then all been made and all withdrawn, and their equities are only what hers then were. She had waived her right to insist upon the deposits as payment by her conduct in reference to her $1,500 note. There was no writing in reference to the deposits, and we know of no rule which excludes parol testimony as to the terms on which they were received.

The 15th exception is "that the note of March 1, 1878, and accompanying agreement, even if not payment of the overdrafts of R. D. Senn & Son, were a release of Mrs. Senn's mortgage to plaintiff." It is probable from the argument that this exception is intended to cover the position that M. R. Senn was a surety; that as such the extension of time given by taking a note at ninety days was a release of her bond and therefore of her mortgage. But an extension of time with the consent of the surety does not release him; here the extension was to the surety herself. Besides, she afterwards agreed to cancel the transaction and restore matters to their original status, and this while she owed neither F. W. Wagener & Co. nor any one else.

The 16th exception asserts that the delivery of the mortgage to Mrs. Senn was a release of its original lien. It does not appear that there was in fact any delivery to M. R. Senn of her mortgage, but the recital of the accompanying paper: "I have

this day deposited" the bond (which was already in the possession of the bank), imports that it was to continue in the bank's possession for the new purpose. The instantaneous transfer for the purpose of the deposit, being similar to that of a deed where there is instantaneous reconveyance by way of mortgage for the purchase money, could not operate except for the purpose of the transfer, and not by way of extinguishment. Were it otherwise, then there was a mutual mistake as to the validity of the substituted paper, which would be a good consideration and reason for cancelling the whole transaction, including the delivery of the mortgage; and then the delivery would not work a satisfaction of the mortgage; but the fact being as we adjudge, that there never was an actual delivery, and never was intended by any party to the papers to be a constructive delivery, there was no delivery, and the mortgage retains its original vitality as against any supposed redelivery thereof to M. R. Senn. The transaction was with M. R. Senn herself, and she could not take any undue advantage of plaintiff therein, nor does she seek to do so, nor can F. W. Wagener & Co. compel her to do so. They must be content with the situation as they found it May 25, 1878.

The last four exceptions are general and have been disposed of in the discussion of the other sixteen.

F. W. Wagener & Co. argue that the judge erred in holding that M. R. Senn's bond was a continuing guaranty. We do not understand him to have so held, and we adjudge that it was only a guaranty of the amount due on January 27, 1877, with interest as stipulated.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.